UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWANDA TELECE WILLIAMS,

                            Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

DECISION & ORDER

17-CV-6400P

## **PRELIMINARY STATEMENT**

Plaintiff Shawanda Telece Williams ("Williams") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI").[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 17).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 12, 15). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and accords with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Williams's motion for judgment on the pleadings is denied.

---

[1] This application was Williams's fourth application requesting SSI. Her previous applications were denied in decisions dated March 16, 2011, August 25, 2011, and July 24, 2013. (Docket # 8 at 70).

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform [her] past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     Parties' Contentions

Williams contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 12-1; 16). Specifically, Williams maintains that the ALJ improperly weighed the medical opinions of record. First, she challenges the ALJ's Residual Functional Capacity ("RFC") assessment on the grounds that the ALJ failed to weigh an opinion co-endorsed by physicians Bradley Van Heukelum ("Van Heukelum"), MD, and Francesca Decker ("Decker"), MD. (Docket ## 12-1 at 19-23; 16 at 1-3). Next, Williams contends that the ALJ's RFC is not supported by substantial evidence because he inexplicably assigned the same weight to conflicting consulting opinions of T. Harding ("Harding"), PhD, and Adam Brownfeld ("Brownfeld"), PhD, and failed to account for the stress limitations assessed by Brownfeld. (Docket ## 12-1 at 23-26; 16 at 3). Finally, Williams maintains that the ALJ improperly discounted the opinions provided by her treating counselor, Katherine Corley ("Corley"), MS MHC. (Docket # 12-1 at 26-30).

The Commissioner maintains that the ALJ was not required to consider the opinion authored by Van Heukelum and Decker because they were not treating physicians, they did not treat Williams during the relevant period, and their opinion was rendered more than four years before the ALJ's decision and more than two years prior to the application date. (Docket # 15-1 at 24-25). Next, the Commissioner contends that the ALJ properly weighed the opinions of Harding, Brownfeld, and Corley in making his RFC assessment. (*Id.* at 25-31).

4

## III. Analysis

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d))[2]. Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture

---

[2] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

(1) the frequency of examination and length, nature, and extent of the treatment relationship,

(2) the evidence in support of the physician's opinion,

(3) the consistency of the opinion with the record as a whole,

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). "Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded." *Salisbury v. Astrue*, 2008 WL 5110992 at *4. The same factors should be used to determine the weight to give to a consultative physician's opinion. *Tomasello v. Astrue*, 2011 WL 2516505, *3 (W.D.N.Y. 2011). "However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating physician's opinion will be given more weight than that of the consultative examining physician." *Id.*

A.   **Opinion of Van Heukelum and Decker**

On October 20, 2011, Decker and Van Heukelum completed a Physical Assessment for Determination of Employability for the Monroe County Department of Social Services ("DSS") relating to Williams. (Tr. 376-79).[3] They indicated that Williams had become a patient in April 2011 and that they had last examined her approximately six months later, on October 20, 2011 – the date of the opinion. (*Id.*). In relevant part, they opined that Williams was unable to participate in activities other than treatment or rehabilitation for the following six months due to depression and that she had limited mobility due to pain and pulmonary dysfunction. (*Id.*). They opined that she suffered from chronic lower back pain and had referred her for an MRI and for pain management. (*Id.*). They assessed that she would be able to sit for only one to two hours during a workday, and would be able to walk, stand, push, pull, bend, lift or carry for less than one to two hours during a typical workday. (*Id.*).

The treatment notes indicate that Decker first treated Williams on July 8, 2011.[4] (Tr. 310-11). She saw Williams again on July 22, 2011, and for a final time on October 20, 2011, the day that she authored her opinion. (Tr. 303-09). According to the treatment notes, Van Heukelum was Decker's supervising physician for the October 20, 2011 appointment, but did not provide treatment to Williams on any other occasion. (Tr. 303-06). Williams's current application for SSI was protectively filed on November 13, 2013, approximately two years after the opinion was authored. (Tr. 79).

Generally, an ALJ is "only required to consider evidence dating one year before an application is filed." *See Tyran v. Comm'r of Soc. Sec.*, 2018 WL 3628252, *4 (W.D.N.Y.

---

[3] The administrative transcript shall be referred to as "Tr. __."

[4] During this visit, Decker opined that Williams was capable of working so long as she was limited to "light duties and away from dust and allergens." (Tr. 311).

7

2018) (citing 20 C.F.R. 404.1512(d)[5]). Relying heavily on this Court's previous decision in *Mura v. Colvin*, 2017 WL 2543939 (W.D.N.Y. 2017), Williams contends that remand is appropriate because the ALJ failed to consider the opinion authored by Van Heukelum and Decker in formulating the RFC, even though the opinion was rendered well before the relevant time period. (Docket ## 12-1 at 19-23; 16 at 1-3). The record in this matter is far different than the record in *Mura* and warrants a different outcome.

First, unlike the opinion in *Mura*, which was authored by a treating physician who regularly provided treatment to the plaintiff over the course of approximately three years, *Mura v. Colvin*, 2017 WL 2543939 at *1, the opinion here was given by a physician who treated Williams for a very short period – less than four months – and met with Williams on only three occasions (Tr. 303-11). Van Heukelum's relationship with Williams was even briefer, confined to a single occasion – the day the opinion in question was authored. By contrast to *Mura*, which involved the ALJ's rejection of the only opinion of record by a treating physician because it predated the period at issue, Decker and Van Heukelum did not have a significant treating relationship with Williams. *See Wearen v. Colvin*, 2015 WL 1038236, *14 (W.D.N.Y. 2015) ("I disagree with [plaintiff's] characterization of [the doctor] as a treating doctor because the record reflects that [the doctor] only treated [plaintiff] on one occasion before rendering her opinion") (citing *Hamilton v. Astrue*, 2013 WL 5474210, *11 (W.D.N.Y. 2013) ("it is not clear that [the doctor] may be considered a treating physician because [plaintiff] testified that the first time she was examined by [the doctor] was when he completed her disability paperwork") (collecting cases)).

---

[5] This regulation was amended effective March 27, 2017, and the current version no longer contains subsection (d), although similar language is now contained in subsection (b).

8

Further distinguishing this case from *Mura* is the time frame between the last treatment date and the relevant period at issue. In *Mura*, the treating physician last treated the plaintiff "less than two months prior to her application date." *Mura*, 2017 WL 2543939 at *6. Decker and Van Heukelum last saw Williams in October 2011, more than two years before her current application. (Tr. 136, 303-05).

Finally, the record in *Mura* did not reflect any significant change in the plaintiff's condition after her treatment with the treating physician ceased and contained very sparse medical treatment records during the relevant time period. *Id.* By contrast, Williams received substantial, although sporadic, treatment relating to her physical impairments after her last visit with Decker and Van Heukelum. For instance, she established primary care treatment with Valentina Antonova ("Antonova"), MD, and treated with her on several occasions relating to her breathing difficulties, bilateral knee pain, hand rash, back pain and depression. (Tr. 431-41). While under Antonova's care, Williams attended appointments with several specialists to address her physical impairments, including a dermatologist (Tr. 428-29), a physical therapist (Tr. 381-83), an orthopedic surgeon (Tr. 343-51), and a neurologist (Tr. 333-41).

Although a medical opinion need not be rejected or ignored "solely because it predates the relevant time period," *Mura*, 2017 WL 2543939 at *5, particularly where the record otherwise contains limited information regarding the claimant's functional capabilities, remand is not required in every instance in which a prior opinion is not explicitly weighed by the ALJ. For example, it is not mandated where, as here, the physician's treatment and opinion significantly predate the relevant period, the physician did not have an established treating relationship with the claimant, and the claimant subsequently received significant treatment for the same alleged impairments. While the ALJ would not have erred by considering the opinion

9

authored by Decker and Van Heukelum, his failure to do so in this case does not warrant remand. *See Wilson v. Comm'r of Soc. Sec.*, 2016 WL 4384334, *15 n.7 (E.D.N.Y. 2016) ("the ALJ was not required to evaluate [physician's] opinions because they predated the relevant time period in this case") (collecting cases).

### B. Opinions of Brownfeld and Harding

On January 10, 2014, Brownfeld conducted a consulting psychiatric evaluation of Williams. (Tr. 296-300). Upon examination, Brownfeld noted appropriate eye contact, fluent and clear speech, coherent and goal-directed thought process, depressed affect, dysthymic mood characterized by crying throughout the evaluation, clear sensorium, full orientation, below average intellectual functioning, and good insight and judgment. (*Id.*). He found Williams's attention, concentration and memory to be impaired due to emotional distress secondary to depression. (*Id.*). He opined that Williams was mildly limited in her ability to maintain attention, concentration and a regular schedule, learn new tasks and perform complex tasks independently, but that she would not require supervision. (*Id.*). He further assessed that she suffered from marked limitations in her ability to deal appropriately with stress. (*Id.*). According Brownfeld, Williams had no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, make appropriate decisions, and relate adequately with others. (*Id.*).

On January 23, 2014, after reviewing medical records and Brownfeld's evaluation, Harding opined that Williams suffered from moderate limitations in her ability to engage in activities of daily living, maintain social functioning, and maintain concentration, persistence, and pace. (Tr. 70). He further assessed that she suffered from moderate limitations in her ability to understand, remember, and carry out detailed instructions, maintain attention and

concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (Tr. 74-76). Harding also assessed that Williams was not limited in her ability to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple-work related decisions, interact appropriately with the general public, ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation. (*Id.*).

    Williams argues that remand is warranted because the ALJ failed to account for the stress limitations assessed by Brownfeld, despite assigning his opinion some weight. (Docket # 12-1 at 23-26). According to Williams, the ALJ's failure to adopt the significant stress limitations assessed by Brownfeld, while seemingly adopting his opinion that Williams suffered from no more than mild mental limitations in her work-related functioning, suggests that the ALJ adopted only the limitations favorable to a finding of not disabled. (*Id.*). I disagree.

    In his decision, the ALJ discussed Brownfeld's opinion at length and explicitly acknowledged that Brownfeld had assessed that Williams suffered from significant limitations in

11

her ability to cope with stress. (Tr. 20, 24). Although relying on Brownfeld's opinion, the ALJ determined to accord it only "some" weight. The ALJ reasoned that Brownfeld, despite assessing that Williams had difficulty dealing with stress, concluded that she was generally capable of performing simple tasks independently, relating adequately with others, and maintaining attention, concentration and a regular schedule. (Tr. 20). In formulating the RFC, the ALJ thus accounted for Brownfeld's assessment by limiting Williams to simple work involving routine tasks. *See Reyes v. Colvin*, 2016 WL 56267, *6 (W.D.N.Y. 2016) ("although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations . . . represents the kind of thorough, individualized mental RFC evaluation contemplated by . . . the overall requirements of the [regulations]").

The ALJ's failure to explicitly include a low-stress limitation in the RFC is harmless, in any event. "It is well settled that the positions identified by the vocational expert," in this case order clerk, charge account clerk, and telephone quotation clerk, "are unskilled jobs that are suitable for claimants with limitations to 'low-stress' work." *See Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018); *see also Martinez v. Comm'r of Soc. Sec.*, 2017 WL 1155778, *11 (E.D.N.Y. 2017) (individual limited to "'low stress jobs,' defined as jobs requiring no more than simple work-related decisions with few, if any, workplace changes" could perform the positions of order clerk and charge account clerk); *Race v. Comm'r of Soc. Sec.*, 2016 WL 3511779, *6-7 (N.D.N.Y.) (position of telephone quotation clerk could be performed by an "individual limited to simple, repetitive tasks in a low stress occupation[] . . . having no more than occasional decision making required and [no] more than occasional changes in the work setting"), *report and recommendation adopted by*, 2016 WL 3512217 (N.D.N.Y. 2016); *Evans v.*

12

*Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 525 (S.D.N.Y. 2015) (individual limited "to low-stress jobs defined as involving only occasional decision-making and interaction with coworkers, the general public, and supervisors" could perform the position of order clerk); *Marquez v. Colvin*, 2013 WL 5568718, *6 (S.D.N.Y. 2013) (individual "limited to low-stress, simple jobs with limited interpersonal contact" could perform the positions of account clerk and order clerk); *Talavera v. Comm'r of Soc. Sec.*, 2011 WL 3472801, *9 (E.D.N.Y. 2011) (individual limited to low-stress jobs could perform position of order clerk), *aff'd*, 697 F.3d 145 (2d Cir. 2012); *Dumas v. Comm'r of Soc. Sec.*, 2008 WL 4104685, *5 (E.D.N.Y. 2008) ("vocational expert . . . identified three jobs that were low stress and repetitive, could be performed at the sedentary level, and required limited education and no decision-making" including telephone quotation clerk).

Williams also maintains that the ALJ erred by assigning the same weight to Harding's and Brownfeld's opinions despite the fact that "their findings as to interacting with others and maintaining a schedule" were "vast[ly] differen[t]." (Docket # 16 at 3; *see also* Docket # 12-1 at 26). As characterized by Williams, Harding opined that she had "limitations with interacting with others and maintaining a regular schedule, while [Brownfeld] felt she had no limitations with doing so." (Docket # 12-1 at 26). Williams's characterization, however, misreads the opinions. As an initial matter, Brownfeld, like Harding, opined that Williams suffered from limitations in her ability to maintain a regular schedule, although he assessed her limitation as mild, rather than moderate as Harding assessed it. (Tr. 75, 299). With respect to interactions with others, Brownfeld opined that Williams had no limitations relating adequately with others. (Tr. 299). Although Harding concluded that Williams would have moderate difficulties accepting instructions and criticism from supervisors, he assessed very few social

13

interaction limitations overall, including no limitations in her ability to interact with the general public, ask simple questions or request assistance, get along with her coworkers or peers, and maintain socially appropriate behavior. (Tr. 75). In sum, Brownfeld's and Harding's opinions do not conflict to such an extent that the ALJ erred by assigning similar weight without explicitly resolving any difference between the two opinions. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony").

### C. Opinion of Corley

I turn to Williams's final challenge that the ALJ improperly rejected the opinions of Williams's mental health counselor. (Docket # 12-1 at 26-30). Licensed clinical social workers are not considered "acceptable medical sources" under the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a).[6] Instead, clinical social workers are considered "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and 416.913(d). As such, their opinions "cannot establish the existence of a medically determinable impairment." *See* SSR 06-03P, 2006 WL 2329939, *2 (2006).[7] Their opinions may be used, however, "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *See id.*

Social Security Ruling 06-03P recognizes that "[m]edical sources . . . , such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *3. The ruling recognizes that such opinions are "important and should be evaluated on key

---

[6] These regulations have been amended effective March 27, 2017. *See* 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The Court cites the version of the regulations in effect at the time of the ALJ's decision.

[7] Given the amendments to the regulations, this policy interpretation ruling has been rescinded effective March 27, 2017, for claims filed on or after that date. *See* 82 Fed. Reg. 15263-01 (March 27, 2017).

issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* The ruling directs the ALJ "to use the same factors for evaluation of the opinions of acceptable medical sources to evaluate the opinions of medical sources who are not acceptable medical sources, including licensed social workers." *Genovese v. Astrue*, 2012 WL 4960355, *14 (E.D.N.Y. 2012) (internal quotations omitted). "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight." *Cordero v. Astrue*, 2013 WL 3879727, *3 (S.D.N.Y. 2013); *Jones v. Astrue*, 2012 WL 1605566, *5 (N.D.N.Y.) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him'") (quoting *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995)), *report and recommendation adopted by*, 2012 WL 1605593 (N.D.N.Y. 2012); *Allen v. Astrue*, 2008 WL 660510, *9 (N.D.N.Y. 2008) (although not an acceptable medical source, "[a]s plaintiff's longtime treating psychotherapist and the only treating source who evaluated the disabling effects of plaintiff's mental impairments, [plaintiff's therapist's] opinion was relevant to the ALJ's disability determination[;] . . . [t]hus, the ALJ should have articulated why he discredited [the therapist's] reports").

The record suggests that Corley began treating Williams in February 2013. (Tr. 287). It appears that Williams ceased mental health treatment in late 2013 due to transportation issues and attempted to reengage in treatment in March 2014. (Tr. 365). Treatment records throughout 2014 are sparse, and Williams was discharged from treatment in July 2015, after not returning for appointments or responding to outreach attempts. (Tr. 353-74, 420-21).

Corley completed Psychological Assessment for Determination of Employability forms for DSS relating to Williams on February 1, 2013, June 13, 2013, August 16, 2013, March 20, 2014, July 21, 2014, and January 23, 2015. (Tr. 385-408). In the earlier assessments, Corley generally stated that she was unable to assess Williams's functional capacities. (Tr. 385-96). In the 2014 and 2015 assessments, Corley opined that Williams was unable to participate in any activities other than treatment or rehabilitation for the following three to six months, and she assessed that Williams had moderate limitations in her ability to perform simple and complex task independently and regularly attend to a routine and maintain a schedule. (Tr. 397-408).

The ALJ determined to give little weight to Corley's opinions, reasoning that she was not an acceptable medical source and that her opinions relied excessively on Williams's subjective allegations and were not adequately supported by the medical record as a whole. (Tr. 24). Williams contends that the ALJ did not provide sufficient reasons for discounting Corley's opinions.

Having reviewed the record, Corley's opinions, and the ALJ's decision, I find that even if the ALJ failed to provide sufficient reasons to discount Corley's opinions – an issue I need not reach – such error was harmless because the opinions do not conflict with the RFC formulated by the ALJ. As noted above, Corley opined that Williams suffered from moderate limitations in her ability to perform simple and complex tasks independently and regularly attend to a routine and maintain a schedule. These limitations are not inconsistent with the conclusion that Williams retained the ability to engage in simple, routine work. *See Burke v. Berryhill*, 2018 WL 1441277, *7 (N.D.N.Y. 2018) ("[t]he Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work") (internal quotation omitted); *Martinez v. Comm'r of Soc. Sec.*, 2017

WL 2633532, *7 (N.D.N.Y. 2017) ("the ALJ's RFC determination for unskilled work is not inconsistent with moderate limitations in mental functioning"); *Newell v. Colvin*, 2016 WL 4524809, *16 (W.D.N.Y. 2016) ("[physician's] assessment that [plaintiff] suffered from moderate limitations in her ability to complete several work-related functions [was not] inconsistent with his ultimate conclusion that she retained the ability to perform unskilled work"); *Burgos v. Astrue*, 2010 WL 3829108, *6 (D. Conn. 2010) ("the fact that [the doctors] indicated the [p]laintiff had moderate limitations on her work abilities is not inconsistent with their ultimate conclusion that she was able to work at a job involving simple and routine tasks"). Thus, Corley's opinions, even if they had been accorded significant weight, do not alter the RFC.

In conclusion, I find that the ALJ's RFC assessment was supported by substantial evidence. Although the record plainly reflects that Williams suffered from both physical and mental impairments, it demonstrates that she sought treatment only sporadically and failed to follow through with recommended treatment. (Tr. 274-91, 303-24, 333-41, 343-51, 353-74, 381-83, 428-29, 431-56, 473-85, 492-516). The medical opinions of record identified generally mild to moderate limitations in her ability to perform work-related functions despite her impairments. (Tr. 70, 74-76, 295, 299, 397-408). Further, the record reflects that Williams was able to engage in substantial daily activities, including caring for her four young children, managing her personal hygiene, preparing meals, performing household chores with some assistance, shopping for groceries and clothing, socializing with her sister and friends, and reading. (Tr. 173-78, 293, 298). The ALJ's RFC accounted for Williams's physical impairments by limiting her to light work with environmental limitations and a sit/stand option and her mental impairments by limiting her to simple, routine work. The ALJ's RFC assessment was reasonable and supported by substantial evidence. *Pellam v. Astrue*, 508 F. App'x 87, 91

17

(2d Cir. 2013) ("[u]pon our independent review of the existing record, including [the consultative examiner's opinion] and the treatment notes from [plaintiff's] doctors, we conclude that the ALJ's residual functional capacity determination was supported by substantial evidence").

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 15)** is **GRANTED**. Williams's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Williams's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 18, 2018